IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILL BERDUX, | ) Case No. 09-3832 SC |
| | ) |
| Plaintiff, | ) ORDER DENYING DEFENDANTS' |
| | ) <u>MOTION TO DISMISS</u> |
| v. | ) |
| | ) |
| PROJECT TIME & COST, INC., PT&C | ) |
| FORENSIC CONSULTING SERVICES, | ) |
| P.A., GROVER DAVIS, RYAN MAPHET, | ) |
| and DOES 1 through 50, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**I.   INTRODUCTION**

Now before the Court is a Motion to Dismiss ("Motion") filed by Defendants Project Time & Cost, Inc., PT&C Forensic Consulting Services, P.A. (collectively "PT&C"), Grover Davis ("Davis"), and Ryan Maphet ("Maphet").  Docket No. 12.  Plaintiff Bill Berdux ("Berdux") has filed an Opposition, and Defendants have filed a Reply.  Docket Nos. 39, 40.  Having considered the papers submitted by all parties, this Court concludes that this matter is appropriate for decision without oral argument.  For the reasons stated below, the Court concludes that the Motion must be DENIED.

**II.  BACKGROUND**

Project Time & Cost, Inc., is incorporated in the State of Georgia, and PT&C Forensic Consulting Services, P.A., is

1    incorporated in the State of Delaware.  Compl. ¶¶ 2-3.[1]  PT&C is
2    engaged in the business of providing forensic engineering services.
3    Id. ¶ 17.  This type of service is marketed primarily to insurance
4    companies.  Id. ¶ 18.  Most insurance companies will only hire
5    approved vendors of forensic engineering services, and Berdux
6    claims that the process of becoming an approved vendor takes many
7    months -- typically six months and sometimes longer.  Id.  ¶ 19.
8    Many insurance companies require vendors to be approved not only on
9    the national level, but also on the local level.  Id. ¶ 20.
10        At the time that the circumstances underlying this dispute
11   began to unfold in the summer of 2006, Berdux was employed as a
12   marketing manager for Rimkus Consulting Group, Inc. ("Rimkus"),
13   which is apparently a competitor of PT&C.  Id. ¶¶ 9-14, 18.  Berdux
14   resided and worked in the state of Nevada.  Id. ¶ 10.  It was
15   during the summer of 2006 that PT&C approached Berdux with an offer
16   to serve as PT&C's first Regional Manager-Western Region, and to
17   open PT&C's first Western regional office in San Francisco,
18   California.  Id. ¶¶ 17, 21.
19        Berdux claims that Maphet, as Executive Vice President for
20   PT&C, arranged to meet with him in Las Vegas, Nevada.  Id. ¶ 21.
21   According to Berdux, Maphet told Berdux during this meeting that
22   PT&C was ready to immediately open an office in San Francisco,
23   California, and assured Berdux that PT&C had already obtained
24   necessary approvals from major insurance companies in the area.
25   Id. ¶¶ 23-25.  Berdux further claims that PT&C paid for him to fly
26   to Atlanta, where he met over lunch with Maphet as well as Davis,

---

[1] Several identical copies of the Complaint are included with the various documents that are attached as "Exhibit A" to the Notice of Removal, Docket No. 1.

2

the CEO and Vice Chairman of Project Time & Cost, Inc. Id. ¶¶ 26. Maphet and Davis allegedly reaffirmed that PT&C were locally licensed and ready to begin conducting business in San Francisco. Id. ¶ 27.

Berdux resigned his employment with Rimkus, moved to San Francisco to began his employment with PT&C. Id. ¶ 33. After he moved, Berdux claims that he learned that the representations made by Maphet and Davis were false, and that PT&C was not locally approved and ready to start doing business with major insurance companies in San Francisco. Id. ¶ 33. In spite of what Berdux describes as his diligent and satisfactory efforts to win approval and business from major insurance carriers, PT&C was not able to grow quickly and Berdux was fired on or about February of 2007. Id. ¶¶ 33-37. Berdux brought the present lawsuit for intentional misrepresentation, fraudulent concealment, breach of a covenant of good faith and fair dealing, promissory and equitable estoppel, and violation of California Labor Code section 970. Id. ¶¶ 38-98.

### III. LEGAL STANDARD

Defendants' Motion rests upon three separate bases: lack of personal jurisdiction, insufficient service of process, and statutes of limitations.

First, Defendants claim that this Court lacks personal jurisdiction over all of the Defendants, and move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedures. Mot. at 3-5. Where, as here, a court considers a 12(b)(2) motion without an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion

to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." <u>Schwarzenegger v. Fred Martin Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004). Jurisdiction must comport with both the long-arm statute of the state in which the district court sits, as well as the constitutional requirements of due process. <u>Mattel, Inc., v. Greiner & Hausser GmbH</u>, 354 F.3d 857, 863 (9th Cir. 2003). The Ninth Circuit has recognized that the California long-arm statute, Cal. Code Civ. Proc. § 410.10, allows Courts to exercise jurisdiction to the limits of the Due Process Clause of the Constitution, "so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1015-16 (9th Cir. 2009).

    Defendants also assert that dismissal as to Davis and Maphet is appropriate pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, based on their claim that service on Davis and Maphet was improper. Mot. at 5-8. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4 [of the Federal Rules of Civil Procedure]." <u>Brockmeyer v. May</u>, 383 F.3d 798, 801 (9th Cir. 2004). Rule 4(e) controls service upon individuals within a judicial district of the United States, and permits service according to the specific methods set down by Rule 4(e), or in accordance with the state in which the district court is located or in which service is made.

4

"So long as a party receives sufficient notice of the complaint, Rule 4 is to be 'liberally construed' to uphold service." Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994)).

Finally, Defendants claim that several of Berdux's causes of action are barred by the applicable statute of limitations, and move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. at 8-9. "If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss." In re Juniper Networks, Inc. Secs. Litig., 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008) (citing Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)). In a motion to dismiss under Rule 12(b)(6), allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

**IV. DISCUSSION**

    **A. Jurisdiction**

A defendant may be subject to personal jurisdiction within a particular judicial district pursuant to theories of either general or specific jurisdiction. See Boschetto, 539 F.3d at 1015-16. In either case, the "defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Schwarzenegger, 374 F.3d at 801).

5

General jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," and requires that the defendant be engaged in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state. See Schwarzenegger, 374 F.3d at 801 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). Alternatively, "a court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court." Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001). When a court assesses minimal contacts for the purpose to asserting specific jurisdiction, "only contacts occurring prior to the event causing the litigation may be considered."[2] Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) (citing Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987)).

The Ninth Circuit has developed a three-pronged test to determine whether specific jurisdiction over a non-resident

---

[2] Contrary to Defendants' assertions, this may not be the case with respect to general jurisdiction. See Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 128 (2nd Cir. 2008) ("[G]eneral jurisdiction over a non-resident, on the other hand, . . . permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." (citation and internal quotation marks omitted) (emphasis in original)); Access Telecomm., Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 717 (5th Cir. 1999) ("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."). Nevertheless, this Court does not reach Berdux's arguments as to general jurisdiction over PT&C, because of its findings with respect to specific jurisdiction over all of the Defendants.

6

defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Boschetto, 539 F.3d at 1016 (quoting Schwarzenegger, 374 F.3d at 801).

Both the Supreme Court and the Ninth Circuit have recognized that "purposeful direction of some act having effect in the forum constitutes sufficient contact to exert jurisdiction . . . ." Unocal, 248 F.3d at 923-24; see also Burger King v. Rudzewicz, 471 U.S. 462, 475-76 (1985). Purposeful availment may therefore satisfy the first part of the Ninth Circuit's test. Unocal, 248 F.3d at 924. It "requires a finding that the defendant '[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990)). Courts must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts with the forum." Burger King, 471 U.S. at 478-79.

As Defendants point out, the Complaint is based on alleged misrepresentations made by nonresidents to a (then-) nonresident, and an allegedly fraudulent employment contract between

7

1  nonresidents.³  Mot. at 5.  All of this took place outside of the
2  state of California.  Id.  However, as numerous courts have
3  emphasized, the most important factor for determining jurisdiction
4  is often where the parties intend for performance of a contract to
5  take place.  See, e.g., Stone v. Texas, 76 Cal. App. 4th 1043,
6  1047-50 (Ct. App. 1999) (denying jurisdiction because "all future
7  consequences of [an] employment contract were in" a different
8  jurisdiction).  Consequently, "the place where a contract is
9  executed is of far less importance than where the consequences of
10 performing that contract come to be felt."  Id. at 1048.

11     That a forum resident be a party to the contract is neither a
12 necessary nor a sufficient condition for establishing jurisdiction.
13 For example, in Nuovo Pignone v. Storman Asia M/V, the Fifth
14 Circuit addressed a tort and contract dispute that arose between
15 two Italian companies.  310 F.3d 374, 377 (5th Cir. 2003).  The
16 defendant had accepted a contractual obligation to ship a reactor
17 from Italy to Louisiana, where a third party would be obligated to
18 unload the reactor.  Id.  After the defendant had transported the
19 reactor, and while it was being unloaded from the ship, an onboard
20 shipping crane broke and the reactor was damaged.  Id.  The Fifth
21 Circuit addressed the question of whether jurisdiction over the
22 Italian defendant was appropriate, and concluded that it was
23 sufficient that the defendant had agreed "to secure a vessel with a
24 satisfactory onboard loading crane that it knew would be used to

---

³ As previously noted, the PT&C entities were incorporated in Georgia and Delaware.  Compl. ¶¶ 2-3.  Both Maphet and Davis were apparently residents of the state of Georgia.  See Maphet Decl., Docket No. 15, ¶1; Davis Decl., Docket No. 16, ¶ 1.  At the time of the relevant communications, Berdux was residing in Nevada.  Compl. ¶ 9.

8

unload cargo in Louisiana." Id. At 379.  Because it had entered into a contract that was designed to cause specific effects in Louisiana, the defendant could not "claim that its contact with Louisiana was merely fortuitous, random, or attenuated after it entered into a contract specifying that state as the point of destination." Id.  The court contrasted the facts before it with a hypothetical situation in which the defendant "had agreed to transport the reactor from Italy to Mexico, but because of bad weather, the [ship] unexpectedly was forced to dock in the Port of New Orleans . . . ." Id. at 379 n.2.  In that case, there would be no reasonable expectation of being haled into court in Louisiana, and therefore no specific jurisdiction. Id.

    This situation is comparable to that in Nuovo Pignone.  Two nonresidents that enter a contract to ship an item to a forum state may be haled into a court of that forum state, at least with respect to a dispute that arises from the execution of that shipping contract within the forum.  It is a small and reasonable leap to conclude that two nonresidents contracting to open an office in a particular forum subject themselves to the jurisdiction of that forum for the purpose of resolving disputes related to the opening of that office.  In this case, the unambiguous purpose of the contract was to initiate and engage in business in the state of California.  Defendants sought Berdux out to enter into business in California.  They made representations about the state of PT&C's affairs in California.  In accordance with the expectations and intentions of Defendants, Berdux moved to California, opened an office for PT&C in California, and received his paychecks from PT&C in California. Berdux Decl. ¶¶ 12, 14-15.  If any harm occurred to

9

Berdux because of the contract that he entered into with PT&C, it would inevitably be felt in California. The location of this suit is therefore anything but fortuitous and unforeseeable. Under these circumstances, Defendants' "conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court [here]." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)). Berdux's claims arise exclusively out of Defendants' California-related activities, and it comports with notions of fair play and substantial justice for this suit to go forward here.[4]

This Court finds that the Complaint alleges facts that are sufficient to assert jurisdiction over each and every Defendant. Both Maphet and Davis are alleged to have made representations as to PT&C's state of affairs in California, with the clear purpose of inducing Burdex to travel to California to engage in business here. Compl. ¶¶ 23-25, 27. PT&C employed Berdux within California, and through its agents and employees, it sought to recruit him for this purpose. Id. ¶ 33. This Court has specific jurisdiction over each Defendant.

### B.   Service Upon Maphet and Davis

Maphet and Davis both claim that they were never properly served. Mot. at 5-8. Rule 4(e)(2) of the Federal Rules of Civil Procedure allow for service by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of

---

[4] Indeed, Defendants point to no facts that would suggest that a California forum would be unfair or unjust, aside from the residency of the parties and the locations that the representations were made.

10

>suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). In addition, Rule 4(e)(1) allows for service to be effected in accordance with the law of the state in which this Court sits (California), or in which service was made (Georgia). Id. 4(e)(1); see also id. advisory committee notes for 1993 amendment (adding "as an alternative the use of the law of the state in which service is effected").

The papers suggest that there is no longer any disagreement as to whether Davis has been properly served. Berdux claims that Davis was actually served twice. Opp'n at 7-8. Defendants only take issue with Berdux's first attempt to serve Davis through PT&C's director of human resources, Nancy Walden ("Walden"). Mot. at 7. But Berdux claims that, in addition to service through Walden, Davis was personally served after the suit was removed to federal court. Id.; McQuaid Decl. Ex. 5 ("Davis Proof of Service") at 1.[5] In their Reply, Defendants do not address this second attempt to serve Davis -- they only challenge Berdux's claim that Davis was served twice.[6] Reply at 5. This Court finds that it is unnecessary to resolve whether substituted service through Walden

---

[5] Moira McQuaid ("McQuaid"), an attorney for Berdux, submitted a declaration in opposition to the motion to dismiss. Docket No. 33.
[6] The Court further notes that a declaration signed by Davis in support of the Motion, Docket No. 16, in which Davis swears that he had not been served, predates the proof of personal service upon him by roughly one month. See Davis Decl. ¶ 4; Davis Proof of Service at 1. However, it does not predate Defendants' Motion. This means that Maphet had indisputably been served by the time that Defendants filed their Motion to challenge service. In the future, Defendants are directed to take care to make sure that a factual basis for their arguments still exists by the time they submit those arguments to this Court.

11

was proper, because Berdux has produced sufficient evidence to conclude that Davis was personally served. See Davis Proof of Service at 1.

The parties still disagree as to whether service upon Maphet was proper. Berdux or his agents attempted service on Maphet at least twice. Opp'n at 6-7. The first time, an individual named Andrew Walsh ("Walsh") attempted to serve Maphet at his home on three separate occasions, before leaving the papers with "Tracy Maphet -- Wife/Co-Resident," who was a "competent member of the household (at least 18 years of age)," after he "informed . . . her of the general nature of the papers." McQuaid Decl. Ex. 4 ("First Maphet Proof of Service") at 2-3. McQuaid thereafter mailed the documents to Maphet. Id. at 6. Although Maphet has stated by a declaration that his wife refused service, he concedes that Walsh left the documents on his front door. Maphet Decl. ¶ 3. It is sufficient to leave service papers outside of a locked door if the resident refuses to accept the papers or to open the door for the process server. See Khourie v. Sabek, 220 Cal. App. 3d 1009, 1015 (Ct. App. 1990). As the Ninth Circuit has recently held:

> Sufficient service may be found where there is a good faith effort to comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service.

Travelers, 551 F.3d at 1136.

Maphet's wife clearly informed him that Walsh had attempted to serve him, and that Walsh left the documents at Maphet's residence. Maphet Decl. ¶ 3. Maphet is now represented by able counsel, his

12

company and colleague were unambiguously served, and there is no basis for concluding that he had no notice of this suit. In this context, it would be reasonable to reject Maphet's wife's "refusal" of service in the same way that courts typically reject a defendant's refusal of service. See, e.g., Travelers, 551 F.3d at 1136. The Court finds that Walsh's attempt to serve Maphet substantially complied with section 415.20(b) of the California Code of Civil Procedure and Rule 4(e)(2)(B) of the Federal Rules of Civil Procedure.

If there is any doubt that Maphet was properly served the first time, he was served a second time. This is supported by the declaration of Frank James ("James"), Docket No. 35, who personally attempted to serve Maphet after the suit was removed to federal court. James rang Maphet's doorbell in the morning. James Decl. ¶ 7. A man came to the door, and James asked, "Mr. Maphet?" Id. The man replied "Yes." Id. James then handed the man the documents, and after inspecting the label, the man replied "I'm not Bryan. He won't be back until 4:00 p.m. today." Id. ¶¶ 8-9. After confirming that the man lived at the residence, James told him that the man could accept the documents on Maphet's behalf. When the man started closing the door, James threw the envelope into the door and said, "You're served." Id. ¶ 12. The man threw the envelope back outside and made several statements that are indicative of anger. Id. ¶ 14. James then placed the envelope outside the door. Id. ¶ 15. Defendants claim that the man was not Maphet (or rather, they claim that Berdux failed to establish that the man was Maphet). Reply at 6. Even assuming that the man with whom James spoke was not Maphet, Defendants provide no explanation

13

1    as to why the man, who purported to reside with Maphet, could not
2    accept substituted service in compliance with Rule 4(e)(2)(B) of
3    the Federal Rules of Civil Procedure.  The Court finds that Berdux
4    substantially complied with the applicable rules for service as to
5    Maphet on two separate occasions.

### C.   Statute of Limitation

#### 1.   California Labor Code Section 970

Berdux's third cause of action is for violation of California Labor Code section 970 ("section 970"), which reads:

> No person . . . shall influence, persuade, or engage any person to change from . . . any place outside to any place within the State . . . through or by means of knowingly false representations . . . concerning . . . [t]he kind, character, or existence of such work . . . ."

Cal. Lab. Code § 970.  Anyone who violates section 970 is liable for double damages.  Id. § 972 ("section 972").

The statute does not provide its own statute of limitations. As such, the question is whether the statute is governed by the general three-year statute of limitations for statutory violations "other than a penalty or forfeiture," Cal. Code Civ. Proc. § 338(a), or the one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture," id. § 340(a). Defendants claim that the double-damages provision of section 972 creates a "penalty" for the purposes of determining its statute of limitations for section 970.  Mot. at 8.  Whether Defendants are correct will determine which statute of limitations applies, and therefore whether Berdux's claim is time barred.

The California Supreme Court recently considered whether the damage provisions of another section of the California Labor Code

14

constituted a "penalty" for the purpose of determining the statute of limitations.  In Murphy v. Kenneth Cole Productions, the court assessed a provision of the California Labor Code, section 226.7, which mandates that employers provide an additional hour of pay, at an employee's regular rate of compensation, for every failure to provide a required meal or rest period.  40 Cal. 4th 1094, 1102 (2007).  The court stated that a "penalty" is "that which an individual is allowed to recover against a wrong-doer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained . . . ." Id. at 1104 (citations omitted).  Most penalty provisions, according to the Murphy court, "chose a fixed, arbitrary amount for the penalty," although "[o]ther penalties took the form of double or treble damages.  These penalties are imposed in addition to any compensation for damages." Id. at 1107.  The court cites, as examples of "penalties," several provisions from the Labor Code that award double and treble damages. Id.; Cal. Lab. Code §§ 230.8, 1197.1.  This clearly demonstrates that a statute granting double damages may in some instances be a "penalty." However, it is worth noting that each current example of a double- or treble-damage provision cited by the court in Murphy was clearly labeled as a "civil penalty" by the legislature. See Cal. Lab. Code §§ 230.8, 1197.1.  Moreover, after Murphy, it remains the case that damages are not "penalties" simply "because a one-to-one ratio does not exist between the economic injury . . . and the remedy selected by the legislature . . . .  Where damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty."

15

Murphy, 40 Cal. 4th at 1112 (citations omitted).

This Court begins its analysis of section 970 by noting that it is not clearly marked as a "penalty," unlike the double- and treble- damage provisions cited by the court in Murphy.  In addition, section 970 is attached to a separate "punishment" provision, California Labor Code section 971, which creates a criminal penalty for violation of 970.  The double-damage provision of section 972 explicitly states that it is applicable "in addition to such criminal penalty," and "without first establishing any criminal liability."  Cal. Lab. Code § 972.  The fact that section 970 has a separate provision that unambiguously creates a "penalty" (which the legislature chose to set as a criminal penalty, and which the legislature clearly distinguished from the double-damages provision), strongly suggests that the civil aspect of section 970 is reparative in nature, rather than punitive.  This is supported by the one published California case that has squarely addressed the nature of section 970.  The court in Chavarria v. Superior Court held that the double-damage provision of section 972 does not create a "penalty" for the purpose of determining whether the provision would be enforced by a Texas court.  40 Cal. App. 3d 1073, 1076-77 (Ct. App. 1974).  In effect, the court's conclusion established that the purpose of 970 was "reparation to one aggrieved, [and not] vindication of the public justice . . . ."  Id. at 1077 (citations and internal quotation marks omitted).

At least one published California decision has noted, in passing, that the one-year "penalty" statute of limitations applies to section 970.  Munoz v. Kaiser Steel Corp., 156 Cal. App. 3d 965, 980 (Ct. App. 1984).  Nevertheless, in light of Murphy and the

16

apparent nature of section 970, this Court finds that section 970 is not a "penalty" for the purposes of determining the relevant statute of limitations. It would therefore be most appropriate to apply California's three-year statute of limitations to Berdux's section 970 claim. This cause of action and Berdux's request for double damages is not time barred.

### 2.   Berdux's Contract-Related Claims

Berdux's fourth and fifth causes of action are for a breach of the covenant of good faith and fair dealing, and promissory and equitable estoppel, respectively. Compl. ¶¶ 84-98. Defendants seek to impose California's two-year statute of limitations for claims based on oral contracts to these causes of action. Reply at 6-7; Cal. Code Civ. Proc. § 339. Berdux claims that these causes of action must be governed by California's four-year statute of limitations for written contracts. Cal. Code Civ. Proc. § 337(a). He points to his "written employment contract, authenticated by PT&C's own Human Resources Director." Opp'n at 8; Walden Decl. Ex. 4 ("Employment Agreement").[7] The Employment Agreement is a letter setting out Berdux's pay, allowances, benefits eligibility, relocation assistance, and the at-will nature of the employment. Employment Agreement at 1-2. It is signed by Walden. Id. at 2. It provides a signature space, marked "accepted," next to which Berdux has provided a date and his signature. Id.

Defendants claim that "[a] signed employment offer is not an employment 'contract.'" Reply at 7. However, their only authority for this assertion is Stone, 76 Cal. App. 4th at 1048, which merely

---

[7] Walden submitted a declaration in support of the Motion. Docket No. 14.

17

held that a particular employment letter that had been signed as accepted was not a contract because the employee/signatory "sent a counteroffer seeking increased benefits and the [employer] agreed to some additional terms but not others."  The Court can identify no barrier that would legally prevent this offer letter, signed by both parties, to be a binding contract.[8]  C.f. Metoyer v. Chassman, 504 F.3d 919, 935 (9th Cir. 2007) (considering an offer letter, together with acceptance letter, to be "an integrated employment contract").

Defendants claim that Berdux has no written evidence of any covenant of good faith and fair dealing, and suggests that these must have therefore been "oral" covenants.  Reply at 7.  This argument fundamentally misunderstands what a covenant of good faith and fair dealing is.  Every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 798 (Ct. App. 2008).  It does not need to be a separate oral agreement.  The covenant asserted by Berdux was implied by a written contract, and is therefore governed by the four-year statute of limitations.  See Harrell v. 20th Century Ins. Co., 934 F.2d 203, 208 (9th Cir. 1991) (applying California law to conclude that a four-year statute of limitations applies to a claim for breach of covenant of good faith and fair dealing related to written contract).

Berdux's fifth cause of action for promissory and equitable

---

[8] Notably, the Employment Agreement states that it establishes terminable-at-will employment, and it "is not intended to be a contract for continued employment."  This language is quite amenable to the reading that the Employment Agreement is a contract for at-will employment.

18

estoppels is similarly founded on the written Employment Agreement between the parties. See Compl. ¶ 90. Although it is not clear that the four-year statute of limitations must necessarily apply to this cause of action, Defendants have failed to persuade this Court that it should be barred by the two-year statute of limitation for oral contracts.

**V.    CONCLUSION**

This Court has specific jurisdiction over all of the Defendants. Service upon the individual Defendants, Davis and Maphet, was adequate. Defendants have not persuaded this Court that any of Berdux's causes of action are barred by a statute of limitations. Defendants' Motion to Dismiss is therefore DENIED.

IT IS SO ORDERED.

Dated: October 20, 2009

_____
UNITED STATES DISTRICT JUDGE